UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GARY A. COLLYARD, COLLYARD GROUP, LLC, PAUL D. CRAWFORD, CRAWFORD CAPITAL CORP., RONALD MUSICH, JOSHUA J. SINGER, MICHAEL B. SPADINO, MARKETING CONCEPTS, INC., AND CHRISTOPHER C. WEIDES,<br><br>Defendants. | Civil Action No. |

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("Commission"), for its Complaint against Gary A. Collyard ("Collyard"), Collyard Group, LLC, Paul D. Crawford ("Crawford"), Crawford Capital Corp., Ronald Musich ("Musich"), Joshua J. Singer ("Singer"), Michael B. Spadino ("Spadino"), Marketing Concepts, Inc., and Christopher C. Weides ("Weides") (collectively, "Defendants") alleges as follows:

## SUMMARY OF THE ACTION

1. The Commission brings this action to enjoin Defendants from acting as unregistered broker-dealers in violation of the broker-dealer registration provisions of the federal securities laws.

2. From at least 2001 to 2010, Bixby Energy Systems, Inc. ("Bixby") raised over $43 million from approximately 1800 investors through a series of purported private placement offerings and the sale of promissory notes. At least half of these funds were raised through a large network of unregistered brokers, or so-called "finders" and "consultants."

3. From 2001 to 2010, the Defendants and Dennis DeSender ("DeSender"), Bixby's former Chief Financial Officer, sold over $21.7 million in Bixby securities to at least 560 investors. As compensation for their sale of Bixby securities, the Defendants and DeSender were paid a total of at least $4.9 million in transaction-based cash commissions. In addition, they also received warrants to purchase over 900,000 shares of Bixby common stock.

4. During the relevant period, Defendants were not registered as broker-dealers or associated with registered broker-dealers. As a result, investors who purchased Bixby shares through the Defendants were deprived of the protections afforded by the registration and regulation of broker-dealers under the federal securities laws.

5. As a result of their conduct, the Defendants violated Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78o(a)].

6. The Commission seeks permanent injunctions against the Defendants to enjoin them from any future violations of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]. The Commission further seeks an order requiring the Defendants to pay disgorgement, plus prejudgment interest, of all ill-gotten gains they received and civil penalties pursuant to Section 21(d) of the Exchange Act [15 U.S.C. §78u(d)].

7. In a related action filed on December 21, 2011, in the United States District Court for the District of Minnesota, the Commission alleged that Robert A. Walker, Bixby's founder and former Chief Executive Officer, and DeSender, violated the antifraud and securities offering registration provisions of the federal securities laws in connection with their offer and sale of Bixby securities. In addition, the Commission alleged that DeSender acted as an unregistered broker in violation of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)] and Walker aided and abetted violations of Section 15(a) of the Exchange Act.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§78u(d), 78u(e) and 78aa]. The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, transactions, practices, and courses of business alleged herein.

9. Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. §78aa]. The acts, transactions, practices, and courses of business constituting the violations alleged herein occurred within the jurisdiction of the United States District Court for the District of Minnesota and elsewhere.

## DEFENDANTS

10. **Gary A. Collyard**, age 61, resides in Delano, Minnesota. Collyard pled guilty to misdemeanor tax fraud in 1998. In August 2011, he was charged by the State of Minnesota with five counts of felony tax fraud. During the relevant period, he was not registered as a broker or associated with a registered broker-dealer. Collyard twice failed to appear for testimony pursuant to a Commission investigative subpoena.

11. **The Collyard Group, LLC** is a Minnesota limited liability company owned and controlled by Collyard, with its principal place of business in Minnetonka, Minnesota. The Collyard Group, LLC has never been a registered broker-dealer. In a 2006 filing with the Commission, Bixby identified the Collyard Group LLC as an entity that "has been or will be paid or given, directly or indirectly, any commission or similar remuneration for solicitation of purchasers in connection with sales of securities in the offering."

12. **Paul D. Crawford**, age 75, resides in Spring Lake Park, Minnesota. Crawford was associated with registered broker-dealers from 1986 to 1996, and held Series 1 and 63 licenses. He was last associated with a registered broker-dealer, Askar Corp., in 1996. In 1997, he was censured by the NASD and placed on a two-year suspension for selling securities in an unregistered offering. During the relevant period, he was not registered as a broker or associated with a registered broker-dealer. He is currently employed at Crawford Capital Corp. Crawford refused to provide documents relating to Crawford Capital Corp.'s current capital raising activities, as required by a Commission investigate subpoena.

13. **Crawford Capital Corp.** is a Minnesota corporation owned and controlled by Crawford, with its principal place of business in Minneapolis, Minnesota. According to its website, the company assists early stage businesses in raising capital through "a network of Angel investors and small venture capital firms." Crawford Capital Corp. has never been a registered broker-dealer. In a 2006 filing with the Commission, Bixby identified Crawford Capital Corp. as an entity that "has been or will be paid or given, directly or indirectly, any commission or similar remuneration for solicitation of purchasers in connection with sales of securities in the offering." Crawford Capital Corp. is currently in the business of raising capital for other companies.

14. **Ronald S. Musich**, age 62, resides in Hamel, Minnesota. During the relevant period, Musich was not registered as a broker or associated with a registered broker-dealer. Musich is a part-owner of Rocket Capital Management, LLC, a state-registered investment advisory firm. Rocket Capital Management is the investment adviser to Rocket Capital Partners, LP, a hedge fund that invested at least $48,000 in Bixby.

15. **Joshua J. Singer**, age 30, resides in Lino Lakes, Minnesota. During the relevant period, he was not registered as a broker or associated with a registered broker-dealer. Singer asserted his Fifth Amendment right against self-incrimination and refused to provide testimony in response to a Commission investigative subpoena.

16. **Michael B. Spadino**, age 47, resides in St. Paul, Minnesota. Spadino was associated with registered broker-dealers from 1993 to 1997, and held Series 6 and 63 licenses. During the relevant period, he was not registered as a broker or associated with a registered broker-dealer. Spadino asserted his Fifth Amendment right against self-incrimination and refused to provide testimony in response to a Commission investigative subpoena.

17. **Marketing Concepts, Inc.** is a Minnesota corporation owned and controlled by Spadino, with its principal place of business in Woodbury, Minnesota. Marketing Concepts, Inc. has never been a registered broker-dealer.

18. **Christopher Weides**, age 57, resides in Elk River, Minnesota. Weides was associated with registered broker-dealers from 1984 to 1989, and held Series 7 and 63 licenses. During the relevant period, he was not registered as a broker or associated with a registered broker-dealer. Weides asserted his Fifth Amendment right against self-incrimination and refused to provide testimony in response to a Commission investigative subpoena.

**RELATED ENTITY AND INDIVIDUAL**

19. **Bixby Energy Systems, Inc.** is a privately held Delaware corporation with its principal place of business in Ramsey, Minnesota. The company is engaged in the business of manufacturing and marketing alternative energy technologies and related products. The company filed Forms D, Notice of Exempt Offering of Securities, with the Commission in September 2006 and November 2007. Bixby has never been registered with the Commission in any capacity and has never registered any offering of securities. On December 14, 2011, the Office of the United States Attorney for the District of Minnesota announced that it had entered into a Deferred Prosecution Agreement with Bixby. In the Deferred Prosecution Agreement, Bixby admits, among other things, that from at least 2006 through May 2011, two of its officers – DeSender and an unidentified individual – in connection with the offer and sale of Bixby securities, made numerous material false statements, false representations, and omissions about Bixby's business and the prospects of conducting an initial public offering of Bixby's shares.

20. **Dennis L. DeSender**, age 64, resides in Minneapolis, Minnesota. DeSender was associated with Bixby from 2001 to May 2011, and served variously as Chief Financial Officer, Chief Operating Officer, and an independent financial consultant to the company. At all times, he was employed as an independent contractor rather than an employee of Bixby. During the relevant period, DeSender was not registered as a broker or associated with a registered broker-dealer. DeSender was convicted for bank fraud in 1998. In March 2011, DeSender pled guilty to one count of tax fraud. In September 2011, he pled guilty to one count of securities fraud in connection with the offer and sale of Bixby securities. On December 1, 2011, DeSender was arrested for soliciting investors for another issuer in violation of his plea agreement.

## FACTS

### The Bixby Offerings

21.    From 2001 to 2010, Bixby raised at least $43 million from over 1800 investors through a series of private placement offerings of stocks, warrants, and promissory notes. The stocks, warrants, and promissory notes issued by Bixby are securities.

22.    Bixby used unregistered persons to offer and sell its securities. In several Bixby private placement memoranda ("PPMs"), Bixby disclosed that up to 10% of the money raised in the private placement may be used to pay commissions to "placement agents" who "assist in the placement of the Shares." The PPMs further disclosed that the company could additionally pay placement agents warrants to purchase up to 10% of the number of common shares of Bixby stock that they were responsible for having placed.

23.    In a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, filed with the Commission on September 12, 2006, Bixby identified the Collyard Group, LLC and Crawford Capital Corp. as entities that have been or will be paid commission or similar remuneration for solicitation of purchasers in connection with the sale of securities.

24.    In 2006, Bixby's audit committee oversaw an internal forensic accounting investigation of the company. As a result of this investigation, Bixby received in December 2006 a draft report of investigation that informed the company that the payment of commissions, or so-called "finder's fees," to unregistered persons and employees violated the securities laws.

25.    In its PPM Supplement dated October 16, 2006, Bixby acknowledged that if "the finders to whom we have paid finder's fees are found to have been acting as unregistered broker-dealers in violation of the Securities and Exchange Act of 1934 *[sic]* and/or state securities laws,

7

we may [be] subject to consequences that could have an adverse impact on our financial position."  In several subsequent Bixby PPMs, Bixby disclosed that its payments to unregistered placement agents could give purchasers the right of rescission and thus have a material adverse effect on the company's financial position.  Notably, however, Bixby never disclosed the 2006 draft report of investigation.

26.     Notwithstanding the foregoing, Bixby continued the practice of paying commissions to unregistered persons and entities until at least 2010.

**Defendants Acted as Unregistered Brokers**

27.     Section 15(a)(1) of the Exchange Act prohibits a broker or dealer from using the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security unless the broker or dealer is registered with the Commission.  Section 3(a)(4) of the Exchange Act defines a "broker" as any person who is engaged in the business of effecting transactions in securities for the account of others.

28.     From 2001 to 2010, the Defendants and DeSender collectively sold over $21.7 million in Bixby securities to at least 560 investors.  Defendants and DeSender each solicited investors in Minnesota and other states, and each accepted transaction-based cash commissions ranging from at least $100,000 to more than $3.6 million.  As compensation for their sale of Bixby securities, the Defendants and DeSender were paid a total of at least $4.9 million in transaction-based cash commissions.  In addition, they also received warrants to purchase at least 900,000 shares of Bixby common stock.

29.     From approximately 2004 to August 2006, the Collyard Group LLC, Collyard, and Musich sold over $3.1 million in Bixby securities to more than 120 investors.  Among other things,

8

they solicited investors, handled investor funds, and fielded investor inquiries regarding Bixby. As compensation for their sale of Bixby securities, Bixby paid Collyard and the Collyard Group commissions of at least $420,000 in cash and warrants to purchase at least 340,000 shares of Bixby common stock.

30. During this time, Musich sold Bixby securities in partnership with Collyard and the Collyard Group, and he received approximately half of the commissions paid to Collyard Group, LLC.

31. In addition, after 2006, Bixby separately paid Collyard and the Collyard Group commissions of at least $160,000 in cash for the sale of Bixby securities.

32. In 2007 and 2008, Bixby separately paid Musich commissions of at least $100,000 in cash for the sale of Bixby securities.

33. From approximately February 2004 to November 2006, Crawford and Crawford Capital Corp. sold over $2 million in Bixby securities to approximately 50 investors. Among other things, they solicited investors, handled investor funds, and fielded investor inquiries regarding Bixby. As compensation for their sale of Bixby securities, Bixby paid them commissions of at least $240,000 in cash and warrants to purchase at least 36,000 shares of Bixby common stock.

34. From approximately August 2007 to November 2009, Singer sold over $1.2 million in Bixby securities to approximately 20 investors. Among other things, he solicited investors, handled investor funds, and fielded investor inquiries regarding Bixby. As compensation for his sale of Bixby securities, Bixby paid him commissions of at least $107,000 in cash.

35. From approximately November 2007 to December 2008, Spadino and Marketing Concepts, Inc. sold over $1.5 million in Bixby securities to over 50 investors. Among other things, they solicited investors and fielded investor inquiries regarding Bixby. As compensation for their

sale of Bixby securities, Bixby paid them commissions of at least $160,000 in cash and warrants to purchase at least 54,500 shares of Bixby of common stock.

36. From 2003 to 2006, Weides sold over $1.9 million in Bixby securities to at least 28 investors. Among other things, he solicited investors, handled investor funds, and fielded investor inquiries regarding Bixby. As compensation for his sale of Bixby securities, Bixby paid him commissions of at least $177,000 in cash commissions.

37. In or around 2010, Weides also acted as an intermediary in the sale of Bixby securities in several secondary market transactions. Specifically, he contacted several Bixby investors to solicit their interest in selling their Bixby shares and coordinated the transfer of ownership of Bixby securities to new purchasers.

## COUNT I

### *Violations of Section 15(a) of the Exchange Act*
### *[15 U.S.C. §78o(a)]*

38. Paragraphs 1 through 37 above are realleged and incorporated herein by reference.

39. The Defendants have, by engaging in the conduct set forth above, while acting as a broker or dealer, effected transactions in, and induced and attempted to induce the purchase or sale of, securities when they were not registered with the Commission as a broker or dealer or associated with an entity registered with the Commission as a broker or dealer.

40. By reason of the foregoing, the Defendants have violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

## **RELIEF REQUESTED**

**WHEREFORE,** the Commission respectfully requests that this Court:

### I.

Find that the Defendants committed the violations alleged herein and find that, as a result of these violations, the Defendants received ill-gotten gains.

### II.

Issue an Order of Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, restraining and enjoining the Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

### III.

Order the Defendants to disgorge their ill-gotten gains, derived directly or indirectly from the misconduct alleged, together with prejudgment interest thereon.

### IV.

Order the Defendants to pay the Commission civil penalties pursuant to Section 21(d) of the Exchange Act [15 U.S.C. §78u(d)].

### V.

Retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VI.

Grant such other and further relief as the Court deems just and appropriate.

**JURY TRIAL DEMAND**

The Commission requests a trial by jury.

Dated:  December 21, 2011

        Respectfully submitted,

        s/ Thu B. Ta
        Thu B. Ta
        Gregory von Schaumburg
        Charles J. Kerstetter
        Attorneys for Plaintiff
        U.S. Securities and Exchange Commission
        Chicago Regional Office
        175 West Jackson Blvd., Suite 900
        Chicago, Illinois 60604
        T. 312-353-7390
        F. 312-353-7398
        tat@sec.gov
        vonschaumburgg@sec.gov
        kerstetterc@sec.gov

        James Alexander
        Assistant United States Attorney
        District of Minnesota
        600 U.S. Courthouse
        300 South Fourth Street
        Minneapolis, Minnesota  55415
        T. 612-664-5600
        F. 612-664-5788
        Local Counsel