# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1405
_____

United States Securities and Exchange Commission

*Plaintiff - Appellee*

v.

Gary Albert Collyard; Collyard Group, LLC

*Defendants*

Paul D. Crawford; Crawford Capital Corp.

*Defendants - Appellants*

Ronald Musich; Joshua J. Singer; Michael B. Spadino; Marketing Concepts, Inc.; Christopher C. Weides

*Defendants*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 16, 2016
Filed: June 29, 2017

_____

Before BENTON and SHEPHERD, Circuit Judges, and STRAND,[1] District Judge.
_____

BENTON, Circuit Judge.

    The Securities and Exchange Commission sued Paul D. Crawford and Crawford Capital Corporation (collectively "Crawford") for acting as unregistered brokers in violation of § 15(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(a). The district court granted the SEC summary judgment, permanently enjoined Crawford, and ordered disgorgement. Crawford appeals, arguing that he qualifies for a "finder exception" to broker registration, and that a statute of limitations bars the injunction and disgorgement. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part and vacates in part.

I.

    Paul D. Crawford has a long history of working in investment. He registered as a securities broker in 1969 and was associated with registered broker-dealers for decades. He founded Crawford Capital Corporation in 1990.[2] Its business is helping raise capital for early-stage companies. In 1996, his license was suspended for selling unregistered securities. He never reinstated it.

    In 2003, Crawford learned about a company called Bixby Energy Systems. He invested about $20,000 in Bixby. Starting around February 2004, Crawford agreed

---

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa, sitting by designation.

[2]At all relevant times, Crawford was the sole owner and employee of Crawford Capital. The district court imputed Crawford's broker activity to Crawford Capital. The parties do not challenge that imputation.

-2-

with a third party to refer investors to Bixby in exchange for a 3% commission on referred investments.  At some point in 2004 or 2005, Crawford agreed directly with Bixby to refer investors in exchange for a 10% fee for referred investments.  Crawford was never a Bixby employee.

Between February 2004 and November 2006, Crawford worked to connect investors with Bixby.  He invited Crawford Capital clients to Bixby presentations, emailed them suggesting they invest in Bixby, predicted success for Bixby, advised clients on tax credits, helped at least one client complete a Bixby subscription agreement, told clients he could negotiate Bixby stock prices, and told at least one client he could arrange a Bixby-related credit-line deal.  Crawford received $240,000 from Bixby, 10% of his referred investments.

At no point between 2004 and 2006 were Crawford or Crawford Capital registered brokers.

In December 2011, the SEC sued Crawford and Crawford Capital, alleging violations of Securities Exchange Act § 15(a) by acting as unregistered brokers and seeking a permanent injunction and disgorgement.  Crawford argued he was not a broker but a "finder."  He also argued that a statute of limitations barred any disgorgement or injunction.  The district court rejected Crawford's arguments, granting summary judgment to the SEC, ordering disgorgement of the $240,000, and permanently enjoining Crawford from violating § 15(a).  Crawford appeals.

II.

Crawford argues this action is time-barred:  "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of *any civil fine, penalty, or forfeiture*, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . ." **28**

**U.S.C. § 2462** (emphasis added). Crawford contends § 2462 bars the SEC from seeking disgorgement and an injunction.

According to the SEC's complaint, Crawford acted as an unregistered broker between February 2004 and November 2006. The SEC sued in December 2011, more than five years after November 2006. If § 2462 applies, it bars this suit. *See* **Gabelli v. SEC**, 133 S. Ct. 1216, 1220, 1224 (2013) (holding, in SEC enforcement action, that claim "accrued" under § 2462 when allegedly unlawful conduct occurred).

The district court found § 2462 does not apply to suits for disgorgement and injunctive relief. This court reviews de novo. **Smithrud v. City of St. Paul**, 746 F.3d 391, 395 (8th Cir. 2014).

A.

After this case was argued, the Supreme Court announced, "Disgorgement, as it is applied in SEC enforcement proceedings, operates as a penalty under § 2462. Accordingly, any claim for disgorgement in an SEC enforcement action must be commenced within five years of the date the claim accrued." **Kokesh v. SEC**, No. 16-529, slip op. at 11 (U.S. June 5, 2017). The SEC now concedes that § 2462 bars it from seeking disgorgement. The disgorgement order is vacated.

B.

The SEC maintains that § 2462 does not bar it from seeking an injunction. It cites this court's statement that "§ 2462 by its terms applies only to claims for 'any civil fine, penalty, or forfeiture,' and therefore does not bar equitable remedies." **Sierra Club v. Otter Tail Power Co.**, 615 F.3d 1008, 1018 (8th Cir. 2010). But *Kokesh* undermines *Sierra Club*'s determination that a claim is not a "penalty" simply because it is "equitable." Courts order SEC disgorgement "as an exercise of their

-4-

'inherent equity power to grant relief ancillary to an injunction.'" *Kokesh*, No. 16-529, slip. op. at 2, *quoting* **SEC v. Texas Gulf Sulphur Co.**, 312 F. Supp. 77, 91 (S.D.N.Y. 1970). Just as disgorgement's "equitable" label does not exempt it from being a § 2462 "penalty," injunction's "equitable" label does not exempt it from being a § 2462 "penalty."

*Kokesh* explained the principles for whether a sanction is a "penalty":

> A "penalty" is a "punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws." *Huntington v. Attrill*, 146 U. S. 657, 667 (1892). This definition gives rise to two principles. First, whether a sanction represents a penalty turns in part on "whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual." *Id.*, at 668. Although statutes creating private causes of action against wrongdoers may appear—or even be labeled—penal, in many cases "neither the liability imposed nor the remedy given is strictly penal." *Id.*, at 667. This is because "[p]enal laws, strictly and properly, are those imposing punishment for an offense committed against the State." *Ibid.* Second, a pecuniary sanction operates as a penalty only if it is sought "for the purpose of punishment, and to deter others from offending in like manner"—as opposed to compensating a victim for his loss. *Id.*, at 668.

***Kokesh***, No. 16-529, slip. op. at 5-6 (alterations in original). "[T]he words 'penalty or forfeiture' in [the statute] refer to something imposed in a punitive way for an infraction of a public law." ***Kokesh***, No. 16-529, slip op. at 7 (second alteration in original), *quoting* **Meeker v. Lehigh Valley R.R. Co.**, 236 U.S. 412, 423 (1915).

The courts of appeals split over whether an injunction can be a § 2462 "penalty." At least one court reasons that injunctions are never penalties because they look forward in time, unlike punishments, which look backward. ***SEC v. Graham***, 823 F.3d 1357, 1361 (11th Cir. 2016). Others conduct fact-intensive analyses to determine whether a particular injunction goes beyond remedying past injuries or

-5-

preventing present dangers. ***SEC v. Bartek***, 484 Fed. Appx. 949, 956-57 (5th Cir. 2012) (permanent injunction and bar on serving as officer or director at any public company are § 2462 "penalties"); ***SEC v. Quinlan***, 373 Fed. Appx. 581, 586-88 (6th Cir. 2010) (permanent injunction and bar on serving as officer or director at any public company are not § 2462 "penalties"); ***United States v. Telluride Co.***, 146 F.3d 1241, 1245-48 (10th Cir. 1998) (injunction requiring restoration of damaged wetlands is not a § 2462 "penalty").

This court need not resolve whether an injunction can be a § 2462 "penalty." Under the facts here, the district court's injunction is not a "penalty": It enjoins Crawford only from violating Securities Exchange Act § 15(a). The district court found Crawford is "reasonably likely to violate Section 15(a) again unless enjoined," given his previous violation of broker rules, operation of a business dependent upon § 15(a) violations, and continued attempts to operate that business after this action began. It also found that the SEC "seeks the injunction not to penalize, but rather to protect the investing public from future Section 15(a) violations by these defendants." The injunction thus (1) requires only obedience with the law, (2) is based on evidence of a likelihood to violate that law, and (3) seeks to protect the public prospectively from Crawford's harmful conduct rather than punish Crawford. The injunction is not a § 2462 "penalty." It is imposed to protect the public prospectively, not redress public wrong. And it is not imposed "for the purpose of punishment" or to "deter others from offending in like manner." *See* ***Kokesh***, No. 16-529, slip op. at 5-6. *See also* ***SEC v. Kokesh***, 834 F.3d 1158, 1162-63 (10th Cir. 2016) ("We fail to see how an order to obey the law is a penalty."), *rev'd on other grounds*, ***Kokesh***, No. 16-529; ***Riordan v. SEC***, 627 F.3d 1230, 1234 (D.C. Cir. 2010) (explaining that because "order simply requires [defendant] not to violate the relevant securities laws in the future," it is "purely remedial and preventative and not a penalty or forfeiture" (internal quotation marks omitted)), *abrogated on other grounds by* ***Kokesh***, No. 16-529.

True, in holding SEC disgorgement was a § 2462 "penalty," the *Kokesh* Court said, "Sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive because 'deterrence [is] not [a] legitimate nonpunitive governmental objectiv[e].'" ***Kokesh***, No. 16-529, slip op. at 8 (alterations in original), *quoting* ***Bell v. Wolfish***, 441 U.S. 520, 539 n.20 (1979).  Also true, the injunction will likely deter Crawford. But the deterrent purpose of SEC disgorgement differs from the deterrent effect of this injunction.  First, "[t]he primary purpose of disgorgement orders is to deter violations of the securities laws." *Id.* (alteration in original), *quoting* ***SEC v. Fischbach Corp.***, 133 F.3d 170, 175 (2d Cir. 1997).  By contrast, deterrence is an "incidental effect" of this injunction, not its primary purpose. *See id.*  Second, SEC disgorgement helps to generally "deter *others* from offending in like manner." *See id.*, slip op. at 6 (emphasis added).  By contrast, this injunction—nonpecuniary and requiring only obedience with the law—likely does little to deter people other than Crawford.  Not every injunction that specifically deters an individual is imposed to punish:  "The historic injunctive process was designed to deter, not to punish." ***Rondeau v. Mosinee Paper Corp.***, 422 U.S. 49, 61 (1975), *quoting* ***Hecht Co. v. Bowles***, 321 U.S. 321, 329 (1944). *See also* ***Weinberger v. Romero-Barcelo***, 456 U.S. 305, 310 (1982) (referring to this quotation as "the classic description of injunctive relief").  This injunction is not a § 2462 "penalty."

C.

Crawford also argues that the concurrent remedies doctrine bars the SEC from seeking the injunction.  The district court did not address this argument.  The SEC contends that Crawford failed to raise it below, which Crawford does not dispute. "Ordinarily, this court will not consider an argument raised for the first time on appeal." ***Gap, Inc. v. GK Dev., Inc.***, 843 F.3d 744, 748 (8th Cir. 2016) (internal quotation marks omitted). Crawford gives no reason for abandoning this general rule.

-7-

*See id.* at 748-49. This court will not address Crawford's concurrent remedies argument.

The district court did not err in finding § 2462 does not bar the SEC's suit for the injunction.

### III.

Crawford says he did not violate § 15(a)'s prohibition on acting as an unregistered broker because he qualifies for a "finder exception" to the registration requirement. The district court disagreed and granted summary judgment to the SEC. This court reviews that grant de novo, viewing the facts most favorably to Crawford. ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

A broker is "any person engaged in the business of effecting transactions in securities for the account of others." **§ 78c(a)(4)(A)**. Certain persons are not brokers. *See* **§ 78c(a)(4)(B)** (banks); **§ 78c(d)** (issuers of municipal securities); **§ 78c(e)** (charitable organizations); **§ 78c(g)** (church plans); **§ 78c(h)** (funding portals). *See also* **17 C.F.R. § 240.3a4-1** (associated persons of an issuer of securities). Section 15(a) makes it

> unlawful for any broker . . . which is . . . a natural person not associated with a broker or dealer which is a person other than a natural person (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security . . . ) unless such broker or dealer is registered in accordance with subsection (b) of this section.

-8-

**§ 78*o*(a)(1)**.  "The Commission, by rule or order, as it deems consistent with the public interest and the protection of investors, may conditionally or unconditionally exempt from paragraph (1) of this subsection any broker . . . or class of brokers . . . specified in such rule or order."  **§ 78*o*(a)(2)**.

Crawford does not dispute he made use of "any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security," or that he was unregistered.  He argues only that the district court erred because it failed to recognize that he qualified for a "finder exception" or "finder defense" to the broker-registration requirement.  It is not clear whether Crawford means (a) he is not a broker or (b) he is a broker, but can raise an affirmative "finder defense" to broker liability.  This court will address two questions: First, did Crawford act as a broker?  Second, if he did act as a broker, does he qualify for an exception or defense to unregistered-broker liability?

A.

As explained, a broker is "any person engaged in the business of effecting transactions in securities for the account of others."  **§ 78c(a)(4)(A)**.  This court has never explicitly applied that definition to a particular person.[3]  Most courts apply a list of factors to determine whether someone is "engaged in the business of effecting

---

[3]This court has addressed liability under Securities Exchange Act § 15(a), but has never evaluated whether someone met the "broker" definition.  In *SEC v. Ridenour*, 913 F.2d 515 (8th Cir. 1990), this court held that an individual was a "broker-dealer" because his "level of activity . . . made him more than an active investor." *Id.* at 517.  Ridenour, however, was a "dealer," not a "broker," because he "effected [trades] on his own behalf." *Id.* at 516.  See **15 U.S.C. § 78c(a)(5)(A)** ("The term 'dealer' means any person engaged in the business of buying and selling securities . . . for such person's own account . . . .").  And in *Guon v. United States*, 285 F.2d 140 (8th Cir. 1960), this court rejected a broker's contention that his securities transaction lacked an interstate component. *Id.* at 144.

transactions in securities for the account of others." This court adopts the Sixth Circuit's nonexclusive factors: "[1] regular participation in securities transactions, [2] employment with the issuer of the securities, [3] payment by commission as opposed to salary, [4] history of selling the securities of other issuers, [5] involvement in advice to investors and [6] active recruitment of investors." ***SEC v. George***, 426 F.3d 786, 797 (6th Cir. 2005), *citing* ***SEC v. Hansen***, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984). *See also* ***SEC. v. Imperiali, Inc.***, 594 Fed. Appx. 957, 961 (11th Cir. 2014), *quoting* ***George***, 426 F.3d at 797.

The district court found the following facts were not genuinely disputed: Crawford had once been a registered broker, but his license was suspended in the 1990s for selling unregistered securities. Crawford was not a Bixby employee. He entered into a consulting agreement with Bixby to receive a 10% commission on investments he referred to Bixby. He was paid $240,000 in fees. He encouraged his clients to invest in Bixby and other companies by sending regular emails forecasting financial success for the companies. He invited potential investors to Bixby presentations. He told clients how to take advantage of tax credits. Sometimes investors gave Crawford their checks made out to Bixby, which he then passed to Bixby. He told clients he could negotiate prices of Bixby stock. He at least once assisted a client in completing a subscription agreement. He at least once told clients that he could arrange a Bixby-related credit line deal.

The SEC presented undisputed evidence that Crawford satisfied five of the six *George* factors. He regularly participated in securities transactions, referring $2.4 million in transactions to Bixby, sometimes handling clients' checks purchasing securities, and sometimes offering to negotiate Bixby stock prices. He was paid by commission. He had a history of selling others' securities. He advised investors, predicting financial success for Bixby and offering tax advice. He actively recruited investors, inviting his client list to presentations and sending them emails. The only

-10-

missing *George* factor is that he was not employed by Bixby. *See **George***, 426 F.3d at 797.

Crawford does not directly dispute this *George*-factor analysis. Instead, he focuses on trying to show he is like the defendant in *SEC v. Kramer*, 778 F. Supp. 2d 1320 (M.D. Fla. 2011). *Kramer* found an individual was not a broker but rather acted as a "finder"—he engaged in only "a narrow scope of activities" and therefore did not "trigger[] the broker/dealer registration requirements." *Id.* at 1336 (collecting cases discussing "finders"); *id.* at 1337-41 (analyzing Kramer's activities). Even if *Kramer*'s analysis were correct, it does not support denial of summary judgment. Kramer's activity was much more limited than Crawford's. Unlike Crawford, Kramer did not promote securities to clients, offer to negotiate prices, accept or deliver checks, fill out agreements, give tax advice, offer to arrange credit-line deals, or have a history of acting as a broker. *See id.* at 1340.

Crawford points to facts outside the *George* factors that he says create a genuine dispute of material fact. Several of these facts have no bearing on whether he was a broker—he received "legitimate" commissions, did not view himself as a "financial advisor" or "broker," and invested his own money in Bixby. Crawford also points out that he received no additional compensation if investors bought additional shares at later dates, and possessed no authority over others' accounts. But he offers no support (aside from a line in *Kramer*) that these facts show he was not "engaged in the business of effecting transactions in securities for the account of others." Because the SEC presents undisputed evidence of Crawford's extensive broker activity—including payment by commission, participation in numerous transactions, and assisting in filling out at least one subscription agreement—there is no genuine issue of material fact whether he was a broker.

-11-

B.

Crawford argues there is a "finder exception" or "finder defense" to unregistered-broker liability. But he points to no statute creating either. He does identify § 78*o*(a)(2), which permits the Commission "by rule or order" to exempt a broker or class of brokers from the registration requirement. He claims that the Commission has exempted finders by no-action letters. The SEC's website describes no-action letters:

> An individual or entity who is not certain whether a particular product, service, or action would constitute a violation of the federal securities law may request a 'no-action' letter from the SEC staff. Most no-action letters describe the request, analyze the particular facts and circumstances involved, discuss applicable laws and rules, and, if the staff grants the request for no action, concludes that the SEC staff would not recommend that the Commission take enforcement action against the requester based on the facts and representations described in the individual's or entity's request. The SEC staff sometimes responds in the form of an interpretive letter to requests for clarifications of certain rules and regulations.

SEC, **Fast Answers: No Action Letters**, https://www.sec.gov/fast-answers/answersnoactionhtm.html (last modified March 23, 2017). *See also* **17 C.F.R. § 202.1(d)**. *See generally* Donna M. Nagy, *Judicial Reliance on Regulatory Interpretations in SEC No-Action Letters: Current Problems and a Proposed Framework*, 83 Cornell L. Rev. 921, 936-44 (1998) (explaining no-action letters).

Assuming that the no-action letters are "rules" or "orders," Crawford cites none exempting him or a class of finders. He cites two letters advising correspondents that SEC staff will not recommend enforcement against them based on specific facts—facts different from Crawford's. **Victoria Bancroft**, SEC No-Action Letter, 1987 WL 108454 (Aug. 9, 1987) ("At most Bancroft will describe to the potential

-12-

purchaser the type of financial institution, the asking price, and the general location."); **Russell R. Miller & Co., Inc.**, SEC No-Action Letter, Fed. Sec. L. Rep. ¶ 81,324 (Aug. 15, 1977) ("Following identification of a potential buyer or seller, Miller does not deal substantively with the other party on behalf of its client with respect to any matter."). Another says some people are not "brokers" and therefore not required to register. *See* **Gary L. Pleger, Esq.**, SEC No-Action Letter, 1977 WL 15164, at *2 (Oct. 11, 1977) ("Individuals who do nothing more than bring merger or acquisition-minded persons or entities together and do not participate in negotiations or settlements probably do not fit the definition of a 'broker' or a 'dealer' and would not be required to register."). None of these letters exempt Crawford from the broker-registration requirement.

Crawford says the courts have recognized a "finder defense." The circuit court cases he cites merely *describe* finders; they do not analyze whether finders are "brokers" under the Securities Exchange Act. *See* ***United States v. DeMizio***, 741 F.3d 373, 375-76 (2d Cir. 2014); ***Thompson v. RelationServe Media, Inc.***, 610 F.3d 628, 683 (11th Cir. 2010) (Tjoflat, J., concurring in part and dissenting in part). And while *Kramer* does refer to "a limited, so-called 'finder's exception,'" it just means that individuals can engage in "a narrow scope of activities without triggering the broker/dealer registration requirements"—not that there is a "finder defense" available to those who are otherwise "brokers." ***Kramer***, 778 F. Supp. 2d at 1336.

The district court did not err in rejecting Crawford's "finder exception" or "finder defense."

\* \* \* \* \* \* \*

The district court's disgorgement order is vacated. In all other respects, the judgment is affirmed.

_____

-13-